OLIVER N. NEWHALL & others *vs.* WILLIAM H. JONES & others.

Essex.    Jan. 29. — March 1, 1875.    AMES & ENDICOTT, JJ., absent.

A. died intestate, leaving an estate of over $10,000, to which his mother was entitled as his next of kin. She died leaving a will, made previously to her son's death, by which one half her property was left to a religious society, and the other half to her two sisters, to be paid to them as they might need in the judgment of the executor. The legatees assigned all their interest in the legacies to the administrator of the son, the society for a valuable consideration and the sisters for a nominal consideration, under an agreement that a committee of the society should distribute the amount, after paying the society $4000. The committee awarded one sister $1500, and the other $1000. *Held*, on a bill in equity brought by the executor and the sister to whom $1000 was awarded, to set aside the assignment, that no fiduciary relation existed between her and the administrator, and that, although she was persuaded by the administrator to sign, yet as there was no fraud on his part and as she acted with a full knowledge of the facts and her rights in the matter, the bill could not be maintained.

BILL IN EQUITY, brought by Oliver N. Newhall, Maria A. Newhall, his wife, and Joseph B. Skinner, against William H. Jones, Sally Slocomb, Fales H. Newhall, the Missionary Society of the Methodist Episcopal Church, and Thomas Carlton, its treasurer, alleging the following facts:.

John M. Twomey, of Lynn, died April 12, 1872, intestate, leaving personal estate to the amount of over $10,000, and the defendant Jones became his administrator. Twomey's only next of kin and heir at law was his mother Hannah Twomey, who died September 9, 1872, leaving a will, by which she appointed the plaintiff Skinner her executor, and bequeathed to her sisters Sally Slocomb and Maria A. Newhall her wearing apparel and household furniture, one half of the rest of her personal property to the defendant Missionary Society, and the other half to her said sisters, "to be paid to them as they may need in the judgment of my executor, to be equally shared between them; if at their decease any of the above named legacy should remain unexpended, my will is that it be paid as soon as may be into the treasurer of the above named Missionary Society, for the support of American Domestic Missions."

This will was duly proved and allowed November 19, 1872 and the plaintiff Skinner was duly appointed executor.

Hannah at her death had little property except that to which she was entitled as next of kin and heir at law of her said son, and all of that was then in the hands of his administrator, who held the same in trust after paying the debts of John to pay the same to the said Hannah, as next of kin, and after her death to pay the same to the said Skinner, her executor, to be distributed by him according to her said will.

Shortly after Hannah's death and before probate of her will, Jones expressed great dissatisfaction with the same and its provisions and endeavored unsuccessfully to obtain possession of it in order to destroy it, and the defendants conspired to defraud the plaintiff Maria, and to distribute the property among such persons as they should think fit, and contrary to the provisions of the will, and with that intent and before the will was presented for probate and while the plaintiffs were ignorant of its provisions and construction, and while he held all the property in his hands as aforesaid, Jones went to the plaintiff Maria and informed her that she could have no benefit from its provisions unless she became reduced to such poverty as should require her to apply for support as a pauper, that Skinner would never give her anything, and that she would never get a dollar; that he the said Jones would do the very best he could for her if she would

sign two certain papers which he had, and asked her to put per-
fect confidence in him and not to communicate in any way to
Skinner what conversation he had had with her, nor what he
wished her to do. She trusting in Jones's statements and being
wholly ignorant of her rights, signed the papers at his request
without reading the same, and without knowing their contents.
These papers were an assignment to Jones by all the parties
named as legatees in the will, of all their rights, interests and
claims under the said will, the consideration being nominal on
the part of Maria A. and Sally, and a written request by Sally
and Maria A. to the executor of the will to pay to Jones their
legacy under the will.

Immediately after the probate of the will Jones presented to
Skinner the said two papers, and claimed the right to hold in his
hands under the same all the property which he then held as ad-
ministrator of the said John M. Twomey. Skinner, believing in
the validity of these instruments, acknowledged the receipt from
Jones of all the property which he as executor of Hannah was
entitled to receive from Jones as administrator of John, and at
the same time took from Jones, as assignee of all the legatees, a
receipt for the same amount, but no property ever actually passed
between them. Jones, after he had obtained Skinner's receipt
for the property, distributed a part to the other defendants and
to other persons unknown, and retained a part in his own hands,
but did not pay or deliver any part thereof to the plaintiffs, and
refused so to do, or to account for any part of it, and told the
plaintiff Maria that she should never have a cent, that the whole
thing was outside of the law and she could not help herself.

The bill prayed that the assignments should be declared void
and should be delivered up to be cancelled, as well as the receipts
given by Skinner to Jones, and that each of the defendants should
be required to render an account of any of said property received
by them or now in their hands, and should be compelled to pay
the same to Skinner to be applied by him according to the will
of said Hannah.

The answer of Jones admitted the deaths of John M. and Han-
nah Twomey, the will of Hannah, the appointments of himself
and Skinner as administrator and executor respectively, and the
condition and amount of their property, all as alleged in the bill.

It admitted also his expressions of dissatisfaction with said will, but denied any attempt to obtain possession of it or to destroy it, and denied all fraud or conspiracy.

The answer further alleged that, after the death of her son, Hannah Twomey intended to make a new will, but was unable to do so, and that after her death Jones conferred with the legatees and proposed to them, for the purpose of carrying out the intention of Hannah, that they should transfer all their interests to him, and that $4000 should be paid to the Missionary Society, and the rest to such persons as a committee of the society and he should direct; that the legatees with full knowledge of all the facts, assented to this, a meeting was had at which the legatees were present and made such statements as they desired, and the committee awarded $1500 to Sally Slocomb, and $1000 to Maria A. Newhall, and other smaller sums to other persons; and that he had paid, set over and assigned said sums to the persons named.

The answers of the other defendants made substantially the same admissions and allegations as the foregoing answer, denied all fraud and conspiracy, and claimed that the assignments were signed by Maria, understandingly and with a full knowledge of all the facts, all the parties intending to carry out the alleged intention of the testatrix to make a new will before her death.

At the hearing before *Colt*, J., upon the bill, answers, and a report of the evidence taken by a commissioner, the plaintiffs contended:

1. That owing to the fiduciary relation in which Jones stood to the other parties with whom he made the contracts in the case, such contracts were voidable at the election of any one of them, and their sale to him of their distributive shares could be rescinded.

2. That the burden was on Jones to show that the contract was advantageous to the plaintiff Maria, and made by her understandingly and without persuasion on his part, and that there was no concealment or misrepresentation by him of any fact or opinion, and that in case of doubt on any of these points the contract should be declared void.

3. That, the rights of the plaintiff Maria, under the will, depending on the exercise of a discretionary power by Skinner, the

statement made to her that she could not get a dollar under the will unless she were a pauper, without further explanation of her rights, was such a misrepresentation as to prevent her from acting understandingly in assigning her rights.

4. If the burden is on Mrs. Newhall to establish any misconduct on the part of Jones or misunderstanding on her own part, that burden is amply sustained by the evidence.

5. The plaintiffs did not claim that Jones wilfully and purposely misled Mrs. Newhall with a corrupt and fraudulent design of benefiting himself, but that in his anxiety to carry out his own schemes in relation to the property he used such contrivance, representations and persuasions to induce Mrs. Newhall to act, as amounted to a breach of trust, and she is entitled to have all such acts set aside, and the property restored, so far as he is concerned, to the original trusts.

The judge found the following facts upon the evidence :

" 1. Mrs. Newhall did not understand from the language of Jones that she could not have a dollar unless she was a pauper in the technical sense of that word, but she did understand that the amount she would have depended upon her future necessities.

" 2. Jones advised her to conceal all the negotiations and transactions of the alleged settlement from Skinner, the executor, and she acted on his advice.

" 3. The evidence does not satisfy my mind that Mrs. Newhall did not understand the papers and their legal effect at the time of their execution, nor does the evidence satisfy me that she was misled at the time of their execution by the statements of Jones as to their effect ; she did understand that she was to receive such sum as should be awarded in full for her interest under the will.

" 4. I find that there was no fraud or deception practised upon Mrs. Newhall by Jones with a corrupt and fraudulent intent to benefit himself, but I find that he was very persevering, persuasive and anxious in his efforts to effect a settlement upon the scheme and plan which he afterward carried into effect in relation to this property, and that his conduct had some effect in inducing her to confide in him and to assign the property to him to be dealt with, as the case discloses.

" 5. Upon all the evidence and upon the undisputed facts I find that the plaintiffs are not entitled to the relief prayed for."

The case was reported for the consideration of the full court, the plaintiffs to have the same advantage from the reported evidence as if the bill had been dismissed, and they had appealed from the findings on the questions of fact.

*J. W. Perry & L. S. Tuckerman*, for the plaintiffs.

*T. B. Newhall*, for the defendants.

DEVENS, J. Upon a careful examination of the evidence we are of opinion that the findings of the judge before whom this cause was originally tried are fully justified, and it must therefore be disposed of upon these and the undisputed facts.

The second and fourth findings need not be discussed in connection with the evidence, as they are admitted by the plaintiffs to be all that they claim; and the fifth is simply the result which the judge deduces from the findings and the admitted facts. The first and third are all that need be considered, and they may be conveniently examined together.

By the first, the judge found substantially that Mrs. Newhall did not understand from the language of Jones that she must be a pauper, in the technical sense of that word, before she could receive a dollar under the will of Mrs. Twomey, but did understand that the amount she would receive would depend upon her future necessities; and further, by the third, that the evidence failed to satisfy him that Mrs. Newhall did not understand the papers or their effect, or " that she was misled at the time of their execution by the statements of Jones as to their effect; she did understand that she was to receive such sum as should be awarded in full for her interest under the will." These findings are we think correct. While Jones said to Mrs. Newhall that she would not receive under the will unless she was a pauper or was destitute, that her sister would get something because she was a widow, but that " she (Mrs. Newhall) had a husband and was not destitute," he also told her that Mr. Newhall (referring to the counsel in the case) said she would receive what would be necessary for her, but that her sister needed more than she did. It appears from Mrs. Newhall's own evidence that she fully appreciated the provision which the will had made for her; for she says " as the will stood I understood my need was to be determined by the trustee. I un-

derstood this provision of the will;" and again, " I knew what the will said ; I was to have half if I needed it." Upon these statements it cannot be doubted that she understood fully that the amount she was to receive under the will was to be determined by the judgment of the trustee according to her necessities, and this understanding was correct.

It is equally clear that she understood that, in place of the uncertain interest which she had under the will by virtue of this provision, she was to receive, by the arrangement made upon the assignment of her interest to Jones, such sum as the committee agreed upon awarded her. She says," At the time of signing I got nothing, and I expected to leave it to the committee to settle my share, believing them to be good men." She says further that she was present at the meeting of the committee, and adds, " I thought that the committee were to determine how much I was to have." With these explicit statements it might fairly be treated as proved that she comprehended the agreement upon which she had entered, and it cannot certainly be held to have been shown that she was misled as to the effect of the papers by Jones, or failed to understand the agreement.

The plaintiff claims also to set aside the contract made by her, upon the ground that she was induced to enter into it by the persuasions of Jones, and that as it has not been for her advantage and the relation of trustee and *cestui que trust* existed between herself and Jones, she is entitled so to do. All her rights, however, were under the will of Mrs. Twomey, and she had none to the estate of John M. Twomey, on which estate Jones was the administrator. By all parties it was fully recognized that the balance left upon settlement of that estate was to be paid over to the executor of the will of Mrs. Twomey. This fact did not, however, place Jones in any fiduciary relation to Mrs. Newhall, who was a beneficiary under Mrs. Twomey's will, and his conduct is not to be tested by the strict rules which have been frequently applied to transactions between trustee and *cestui que trust*.

The principle upon which it has been held that purchases made by a trustee, as well as other persons occupying fiduciary relations, of the property entrusted to them may be avoided by the parties interested is, that the trustee so purchasing has placed himself in a situation inconsistent with the due execution of his

trust. *Litchfield* v. *Cudworth*, 15 Pick. 23, 31. *Yeackel* v. *Litch-field*, 13 Allen, 417, 419. It has however, no application here. It was competent for Mrs. Newhall, acting in connection with such others as were beneficially interested under the will of Mrs. Twomey, to agree to receive instead of the uncertain and contingent provision made for her by Mrs. Twomey, either a definite sum of money, or one to be fixed by any person to whose award she might agree. *Smith* v *Harrington*, 4 Allen, 566. *Bowditch* v. *Andrew*, 8 Allen, 339. *Russell* v. *Grinnell*, 105 Mass. 425. Unless she can show that she was misled either as to her rights under the will, or as to the effect of the agreement she made in reference to them, the contract should be performed by her. The question which would be presented if she had been persuaded to enter into this by Skinner, who was the executor of Mrs. Twomey's will, would differ entirely from that now before us. There would then be much justice in saying that as the allowance to be made her depended solely upon his discretion, he could not be permitted to induce her to accept any different provision, as, if she did not yield to his persuasion in the matter, he might be wrongfully tempted in the exercise of his discretion. Whether she was influenced or not by Jones, however, he had no power or discretion as to her rights under Mrs. Twomey's will. It is for her to satisfy the court that she has been misled by him, and she cannot insist that he shall clear himself from suspicion in regard to it. As however he was a person to some extent confided in by her, and as his persuasions and conduct had an effect in inducing her to assent to the arrangement actually made, it is proper to consider whether any circumstances exist tending to show fraud on his part, and perhaps it might be more readily inferred against him than against another who had not so interested himself in the matter. None such, however, appear : from the transaction he derived no benefit pecuniarily or in any other way. His conduct may have proceeded from mere officiousness, or from an honest belief that the course adopted would cause some persons to be provided for as Mrs. Twomey had desired that they should be, while she had failed so to do, but there is nothing in it that should induce us to set aside the contract voluntarily made by the plaintiff. *Bill dismissed*