SCHOELLKOPF HOLDING COMPANY, Appellant, *v.* SAMUEL
KAVINOKY, Respondent.

Will — testamentary power of sale — property of testator must
be sold in manner directed in power of sale — when sale invalid
as to infants.

1. A power of sale granted by the will of a testator must be strictly
pursued, and must be executed according to the intent of the
testator, and where it was manifestly intended that the sale or
sales of his residuary estate should be for cash or the equivalent
of cash, the sales must be so made, unless consent that they be
made otherwise be given by all of the parties interested in the
residuary estate.

2. Where under such conditions no proceeding was had in the
Surrogate's Court in which infants interested in the property were
cited or represented, a sale and transfer of the property is invalid
and ineffectual to divest them of their interest.

*Schoellkopf Holding Co. v. Kavinoky*, 170 App. Div. —, affirmed.

(Argued December 2, 1915; decided January 4, 1916.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the fourth judicial department,
entered July 14, 1915, in favor of defendant upon the
submission of a controversy under section 1279 of the
Code of Civil Procedure.

The nature of the controversy and the facts, so far as
material, are stated in the opinion.

*Vernon Cole* for appellant.    The executors had full and
complete title, power and authority to transfer these
lands to any one, and by transferring the same to
the Schoellkopf Holding Company they vested in that
company full and complete record title. (*Albany Ex.
Savings Bank* v. *Brass*, 59 App. Div. 370; 171 N. Y.
693; *Anderson* v. *Blood*, 152 N. Y. 285.)    The decree of
the surrogate passing and settling the accounts of the
executors of the Jacob F. Schoellkopf estate, based so far
as the interest of Alfred Schoellkopf therein is concerned,
upon the payment to and the release by Alfred's execu-

tors of that distributive share is final and conclusive upon that interest. (*Salisbury* v. *Slade*, 160 N. Y. 278; *Greenland* v. *Waddell*, 116 N. Y. 234; *Stagg* v. *Jackson*, 1 N. Y. 206; *Matter of Wagner*, 119 N. Y. 28.) The agreement of the 12th of September, 1901, was valid and effectual and required these lands to be sold and disposed of in the manner that they were. (*Matter of Wagner*, 119 N. Y. 28; *Matter of Hodgman*, 11 App. Div. 344.) The agreement of September 12, 1901, in equity operated to convert all of the interest in this land into stock of the company so to be formed; hence the carrying out of that agreement by the trustees and the delivery of stock therefor was not a breach of trust. (*Williams* v. *Haddock*, 145 N. Y. 144; *De Barante* v. *Gott*, 6 Barb. 492.) The trust created for the wife and children of the testator's son Louis was in no manner interfered with; the only thing done was to invest in the capital stock of the plaintiff company rather than in other securities, all of which was not only originally consented to, but after the expiration of the trust the interested parties, with full knowledge, released the trustees. (*Woodbridge* v. *Bockes*, 59 App. Div. 504; 170 N. Y. 596.)

*Michael M. Cohn* for respondent. The executors and trustees had no power to convey the lands and premises involved, except pursuant to a *bona fide* sale and for a valuable consideration in the form of cash or its equivalent. (1 Jarman on Wills [6th ed.], 917; 2 Underhill on Wills, 1119, § 783; *Griswold* v. *Caldwell*, 65 App. Div. 371; *Adair* v. *Brimmer*, 74 N. Y. 539.) The conveyance by these executors and trustees to plaintiff "holding company" was, in effect, merely a transfer or delegation of their own powers and responsibilities as trustees to another, and is condemned by law and void. (2 Underhill on Wills, 1124, § 784; *O'Connor* v. *Waldo*, 83 Hun, 489; 158 N. Y. 672.) The conveyance to plaintiff is void because it violates the scheme of the will, and defeats the trust

created for the wife and children of the testator's son, Louis. (2 Heaton on Surrogates' Courts, 1330; *Matter of Ungrich*, 201 N. Y. 415; *Stringer* v. *Young*, 191 N. Y. 157; *Dale* v. *Guaranty Trust Co.*, 168 App. Div. 601.) The new agreement of July, 1906, is absolutely void because the infant children of Alfred Schoellkopf were not, and were incapable of being, parties; because the executors of Alfred Schoellkopf had no legal authority to execute it; because its effect is to utterly defeat and annihilate the intention of the testator and the specific provisions of the will; and because the children of Louis Schoellkopf were under the age prescribed in Jacob's will. (*Turco* v. *Trimboli*, 152 App. Div. 431; *Matter of Evans*, 82 Misc. Rep. 193; *Matter of Easterly*, 202 N. Y. 466.)

COLLIN, J. The plaintiff, as the vendor of real estate, seeks a judgment directing the defendant, as the vendee, to specifically perform the contract of purchase and sale made in November, 1914. The defendant denied the marketability of the proffered title, which came to the plaintiff through a deed, dated February 14, 1910, of the executors and trustees under the will of Jacob F. Schoellkopf. The testator at the time of his death owned the real estate in fee simple, and in case the executors and trustees had power and authority to convey the title devised by him, the defendant errs.

The will devised the residuary estate, which included the contracted parcel and many others, to the executors and trustees, in trust, to take possession and sell, convey and dispose of it at such time or times, and on such terms, as to them seemed advisable, and, after making provision for a designated annuity, and the payment of debts and legacies, "to divide and distribute said residue of my estate as follows: to pay to" each of six children or the descendants of a child one-seventh thereof, and to retain one-seventh thereof in trust. In January, 1910, a number of the parcels of land,

including that in question, and a substantial part of the residuary personal property were still held by the executors and trustees; and all of the persons who as legatees or devisees were interested in the residuary estate (except three infants hereinafter mentioned) organized from themselves, pursuant to two agreements between themselves, the plaintiff corporation with an authorized capital stock of $560,000, for the expressed purposes of taking over and acquiring title to such land and personalty, subject to and with the assumption of the debts and incumbrances, of issuing its capital stock in payment or exchange therefor and distributing it in proper amounts to the residuary legatees, of distributing the proceeds of the property as sold by the plaintiff to the holders of its capital stock and of dealing in real estate generally. In February, 1910, the executors and trustees conveyed and transferred to the plaintiff the lands and personal property (excepting certain specified securities and funds), and received as the consideration the 5,600 shares or the entire of the capital stock. Thereupon the Surrogate's Court, in a judicial settlement of the accounts of the executors and trustees, which set forth, among other things, the above-stated transactions and the two agreements mentioned underlying them, the second of which provided that the surrogate upon the final accounting might make and enter a decree " confirming the transfer of the property to the corporation on receipt of the capital stock and directing the distribution thereof as directed by the will," made the decree thus consented to. The shares of stock were in accordance therewith distributed in lieu of cash, and those who had consented to the decree released the executors and trustees from all claims on account of the residuary estate. The two agreements mentioned were elaborate and extended. It is sufficient here to state that the formation of the plaintiff, the conveyance and transfers to it, the issuance and transfer of the shares of capital stock to the executors and trustees in lieu of

cash, the distribution of them, the final decree and the discharge and release of the executors were in strict accord with the provisions of the second of them.

Each of the adult persons interested personally in the residuary estate, who executed the agreements or the second of them, is obligated by them and the consequent transactions. Each was capable of acting for himself or herself and had full knowledge of the facts and circumstances and knowledge as to his or her legal rights. The agreements themselves directly disclose those facts. They, under such conditions, authorized the trustees to make the conveyance and transfers and receive the shares of stock as the consideration for the transfers, which, therefore, were effectual and valid as to them. Although the agreements were not executed by all the residuary legatees, the agreements and the consequent transfers would be operative and valid against the adult contracting legatees to the extent of their respective interests. (*Matter of Hall,* 164 N. Y. 196; *Ward* v. *Ward,* 15 Pick. 511; *Woodward* v. *Woodward,* 16 N. J. Eq. 83; *Ford's Estate,* 185 Pa. St. 420; *Newhall* v. *Jones,* 117 Mass. 252; *White* v. *Sherman,* 168 Ill. 589.) The executors and trustees, however, had not lawful power and authority by virtue of the will itself to make the sale and transfers for the consideration received, to wit, the shares of stock. The power of sale granted by the will must be strictly pursued, and must be executed according to the intent of the testator. The testator here intended, manifestly, that the sale or sales should be for cash or the equivalent of cash. The consent of parties concerned gave the transfers validity as to them. A flaw in the appellant's position is that certain persons interested in the residuary estate did not enter into or become obligated by the agreements.

The signatories of the first agreement, that of September, 1901, included all of the residuary legatees, except two infants upon whose consent to it, " upon their

severally coming of full age so that they may bind themselves to the terms hereof," it was conditional. Before the two infants became of age, or the corporation contemplated by the agreement was formed, a party to it — a residuary legatee — Alfred Schoellkopf, died. He left a widow and three infant children, and a will, duly probated, creating interests in them in his residuary legacy. The signatories of the second agreement, that of July, 1909, included all of those interested in the residuary estate (the infants of 1901 having become of age) except the three infant children of Alfred, and included also the executors of Alfred's will.

The appellant asserts that Alfred Schoellkopf, and consequently the executors of his will, were obligated by the agreement of 1901. Therein it errs for the reason (and there may be another) that such agreement did not become binding upon Alfred because it was conditional upon the entering into it of the two infants and the condition was never fulfilled. The differences in the first and second agreements were so substantial that the latter cannot be deemed the adoption or ratification of or a consent to the former. The action of the executors of the will of Alfred, in agreeing to receive or in receiving the residuary distributive share bequeathed to Alfred in shares of stock instead of money, was not authorized by the will or the agreement or binding upon the infant children. The children were not cited or represented by special or other guardian in the proceeding in the Surrogate's Court and, obviously, the decree therein in no way affected their rights or interests. As to them the sale and transfers were unlawful and invalid and ineffectual to divest the property transferred to the plaintiff of their interests therein.

The respondent asserts that the transfers were void and ineffectual also as to certain *cestuis que trusts* and their interests in the residuary estate. The executors and trustees were directed " to retain one-seventh thereof

for said Myra Lee Schoellkopf and the children of my son Louis Schoellkopf," in trust, to invest the proceeds and pay the income to Myra during her life; thereafter equally to the children until they respectively arrived at the age of thirty years; then to pay them in equal shares the said one-seventh part.   Myra and the children when of full age entered into the second agreement.   Under the judicial decisions above cited they and their interests in the property transferred were bound by and subjected to the transfers.   The transfers did not in any sense terminate the trust or assign the rights of the beneficiaries to receive the income from the trust estate.   They merely changed the substance of the trust estate.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, CARDOZO, SEABURY and POUND, JJ., concur.

Judgment affirmed.