Irving H. Saypol, J.
Motion for summary judgment in an action under article 15 of the Beal Property Law is granted and the answers stricken on the detailed and capably expressed report of the guardian ad litem, James B. Kilsheimer, III, which is adopted and confirmed as part of this decision and incorporated herein in the appendix. No opposing affidavits have been filed. All appearing defendants agree that summary judgment is in order. The contentions of the defendant Baer regarding the invalidity of certain provisions of the will of George B. Wilson are overruled and his request for compensation must be denied as unauthorized.
The plaintiff is entitled to judgment declaring that the will of George B. Wilson validly disposed of his entire interest in *469 the subject property and the conveyance to the plaintiff by the trustees of the will of Emily Earle Wilson was authorized in law and is approved by the court. Settle judgment to be accompanied by the guardian’s affidavit of services.
Report of Guardian ad Litem
The undersigned was appointed by order of Mr. Justice Irving H. Saypol of this court dated November 6, 1957 to be guardian ad litem in this proceeding to protect the interests of Dodge Crockett, Jr., Elizabeth Earle Crockett, Juliet S. Welton, Richard Earle Welton and Clare Street! Chapman, infants interested in this action. My consent to serve as guardian ad litem and affidavit of qualification were served and filed herein on or about November 27, 1957.
This report is submitted to the court in connection with plaintiff’s motion seeking summary judgment for the relief sought in the complaint. My purpose is to set forth the pertinent facts, and the legal conclusions flowing therefrom, to assist the court in adjudicating the rights of my wards on this motion.
Plaintiff, Wilson Building, Inc., brought the action pursuant to article 15 of the Real Property Law for a judgment, in essence a declaratory judgment, determining the title to a parcel of real property in New York County. The subject property as described in the complaint is valuable realty located at the southeast corner of Broadway and West 33rd Street, commonly known as the Wilson Building. It is assessed for real estate tax purposes at $1,400,000, and consists of a 12-story office building.
The record title to an undivided 212/240ths of the estate is in plaintiff corporation, while record title to the remaining undivided 28/240ths is in one Rommel Wilson. Prior to the institution of this action, plaintiff applied to the Title Guarantee & Trust Company for a policy of title insurance insuring good title in plaintiff. The title company raised various objections to plaintiff’s title, which precipitated this suit to clear and quiet the title to the premises. The title company objections fell basically into two main categories:
1. The will of George B. Wilson, the former owner of the entire fee title, was invalid, in part, under New York law as unlawfully suspending the power of alienation — a violation of the so-called Rule against Perpetuities;
2. The trustees under three different wills in the chain of plaintiff’s title —estate of Emily Earle Wilson, estate of Gertrude Rommel Wilson, estate of Florence Wilson Martens *470 — conveyed their undivided interests in the subject realty to plaintiff in exchange for their proportionate stock interest in plaintiff without court authorization.
Each of these objections will be discussed later in this report as they relate.to the interests of my wards. First, there are certain relevant facts to be called to the court’s attention.
THE FACTS
Title to the subject property, so far as is material here, was originally held by George B. Wilson who died on June 13, 1912. His will and a codicil thereto were probated before the Register of Wills of Philadelphia, Pennsylvania. He was survived by his widow, Edna Wilson and by four children, George Searing Wilson, Graham L. Wilson, Florence Wilson Martens, and George B. Wilson, Jr. For the court’s convenience a copy of the family tree of George B. Wilson, as furnished to the guardian ad litem, follows: [See page 480.] As will appear hereinafter, my wards claim through the trusts set up in the will of Emily Earle Wilson, widow of George B. Wilson, Jr.
Under the will of George B. Wilson, executed February 24, 1912, so far as is material to this action, the residuary of his estate, which included the fee title to the subject realty, was divided as follows:
7/20ths outright to his widow Edna Wilson.
l/20th in trust for each of his four children for five years from Wilson’s death, and then payment of each child’s share outright. Each of the four children survived Wilson by more than five years, and so this 4/20ths of his estate was paid outright to the children.
9/20ths after payment of six annuities, in trust to pay the income to testator’s wife, Edna Wilson, for life, and on her death to continue the same in trust with income payable to testator’s four children until George B. Wilson, Jr. (testator’s youngest child) reached 50 years of age. At that time the principal of the trust was to be divided among testator’s four children, or their descendants.
By a codicil to his will, executed on April 12, 1912, Wilson inserted the following clause: ‘ ‘ Lastly, I have directed that the time for distribution of the nine-twentieths of the residuary estate, subject to the payment of annuities, shall be when my *471 son, George B. Jr., shall attain the age of fifty years. I now alter the time for distribution and payment over of my residuary estate, so that the time shall be upon the attainment of the age of fifty years by my youngest child who shall attain said age. In case of the death of all my children before any shall attain the age of fifty years, then I direct that the estate shall be divided amongst the parties directed by Will, subject to the retention of sufficient to pay the annuities above directed.”
It is the second sentence of the above clause in the codicil that raises the questions under the Rule against Perpetuities. As actually happened, the testator left four children, as well as his widow. Therefore under the above codicil, the power of alienation was suspended as of the testator’s death for a possible period of five lives in being. In fact, three of testator’s children reached 50 years of age, but, the fourth, George B. Wilson, Jr., died approximately .two and one-half months prior to his 50th birthday.
Since Wilson’s will is invalid, in part, under New York law, the question raised in this action is: How much of the will becomes invalid? Obviously, if the entire will is held to be invalid, then the attempted distribution under the residuary clause must be recalled and the same handled under the intestacy statutes in existence in 1912. Under those statutes, the entire estate would have vested in the decedent’s four children, subject only to the widow’s dower rights. On the other hand, if only a partial invalidity is decreed, the testamentary plan of the decedent may, for the most part be salvaged. This will be discussed later in this report.
In fact, the trustees of the Wilson estate apparently always assumed the validity of the will. Upon the death of George B. Wilson, Jr., in 1928, the trustees undertook to distribute the remaining 9/20ths of the residuary estate to the three surviving children and to the estate of George B. Wilson, Jr. The latter left a will leaving his entire estate to his widow Emily Earle Wilson. The estate of George B. Wilson, Jr., received a 39/240ths interest in the subject property, which was the entire interest he was to receive under his father’s will. Only if the entire will of George B. Wilson were held to be invalid would George B. Wilson, Jr., have received a greater interest in the property. This is important, because the source of the interests of my wards is the interest of George B. Wilson, Jr.
THE INTEREST OF MT WARDS
As noted above, upon the death of George B. Wilson, Jr., the trustees of George B. Wilson distributed the balance of the *472 residuary trust. Emily Earle Wilson, widow of George B. Wilson, Jr., and Ms sole beneficiary, became the owner of 39/240ths undivided interest in the building. Upon her death on April 29, 1941, she left a will under which the interest in the subject realty was disposed of in the residuary clause. The provisions material to the interests of my wards are paragraphs sixth (a) 2, and sixth (a) 11. The former devised one fifth of the residuary to the trustees of trust fund A, and the latter gave one fifteenth of the residuary to the trustees of trust fund B. The disposition of these trusts was:
Trust Fund A: Trust with income payable to Swepson Earle for life (he is now deceased); upon his death, income to his wife, Georgia Earle, for life. Upon her death, principal to be paid to “then living lawful descendants ” of Swepson Earle. Swepson Earle left, in addition to Ms widow, three children: Juliet Earle Welton, Louise Earle Crockett and Elizabeth Earle Chapman, who are still alive. My wards are the infant children of the three above-named descendants of Swepson Earle.
Trust Fund B: Trust with net income payable to Elizabeth Earle (now Elizabeth Earle Chapman). Upon her death, principal payable to her “ then living lawful descendants ”, and if none then to the descendants of Swepson Earle.
My wards are as follows: Richard E. Welton and Juliet Earle Welton, children of Juliet Earle Welton; Dodge Crockett, Jr. and Elisabeth E. Crockett, children of Louise Earle Crockett; Clare Streett Chapman, child of Elizabeth Earle Chapman. All of my wards are grandchildren of Swepson Earle. To assist the court, the family tree of Swepson Earle may be set up in the following manner: [See page 481.]
Their interests are as follows:
Trust Fund A: My wards have contingent remainder interests. If any child of Swepson Earle should predecease Georgia Earle, the secondary life beneficiary of trust fund A, then the child or children of such predeceasing child would become vested remaindermen and entitled to his or her parent’s share.
Trust Fund B: My ward Clare Chapman is a vested remainderman of this trust. Upon the death of her mother, Elizabeth Earle Chapman, my ward is entitled to the principal of this trust. Should Clare Chapman predecease her mother, my other wards would then be contingent remaindermen of this trust.
Thus, the interests represented by the guardian ad litem are contingent remainder interests in trust fund A, and both vested and contingent remainder interests in trust fund B.
*473 THE LAW RELATING TO THE VIOLATION OE THE RULE AGAINST PERPETUITIES
There does not appear to be any room for argument about the invalidity of the codicil to the will of George B. Wilson in which he fixes the time for distribution of his residuary trust “ upon the attainment of the age of fifty years by my youngest child who shall attain said age.” As previously noted in this report, when Wilson died there were five persons in being (his widow and four children) whose lives measured the duration of the residuary trust. (Cf. Real Property Law, § 42; Personal Property Law, § 11.)
On the other hand, had testator’s will stood alone, without the codicil, no invalidity would occur. The will itself measured the residuary trust by the testator’s widow and further until his son George B. Wilson, Jr., reached 50 years of age. It is, of course, well settled that the annuities provided for in the residuary clause did not add measuring lives in determining the validity of the trust. (Matter of Fischer, 307 N. Y. 149 [1954]; People’s Trust Co. v. Flynn, 188 N. Y. 385 [1907].)
New York law is well settled in favor of testacy and the avoidance of intestacy if the same is possible without doing violence to the decedent’s testamentary plan. Stated another way, if the invalid portions of a will are so vital to the testamentary plan, or if they are so intermingled with the valid portions that the two cannot be separated, then the rule is that the entire will must fall. If, on the other hand, the invalid provisions may be excised while leaving the valid portion of the will intact and still preserving the decedent’s general testamentary plan, the courts will favor that construction to avoid total intestacy and still not violate the Rule against Perpetuities.
The foregoing rules are amply supported by the eases; a few citations of authority will suffice to illustrate the point. “ [W]hen it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be.” (Kalish v. Kalish, 166 N. Y. 368, 375 [1901].)
Only recently the Court of Appeals had occasion to restate this salutary rule as follows: “In line with the policy of the courts to carry out the intention of the testator as far as possible, and since that can be accomplished by excising the invalid provisions of the will while leaving the valid parts intact, the trust for the widow may be upheld.” (Matter of Fischer, 307 N. Y. 149, 158 [1954], supra.) To the same effect: Matter of *474 Durand (250 N. Y. 45, 53 [1928]); Matter of Lyon (271 N. Y. 204, 209 [1936]).
The Court of Appeals had before it in Matter of Eveland (284 N. Y. 64 [1940]) a case that almost parallels the situation in the instant action. There the testator established a trust to continue during the lives of his wife and son, with remainders to his grandchildren. He thereafter executed a codicil postponing the time for distribution until each grandchild reached 35 years of age. The court ruled (pp. 73-74):
“ Premature termination of the trusts which the testator attempted to create cannot affect or change the persons who take the remainder or the share that each will take or change the remainder. The excision of the provision in the codicil merely gives immediate effect to a remainder which would otherwise be postponed. The dominant scheme of the testator shown both in the will and the codicil was to vest in his grandchildren living at the death of the last survivor of the two life beneficiaries the entire corpus of his residuary estate and unclaimed accumulated income in certain specified shares.
“ The scheme for distribution was not so intimately tied up with the alleged invalid provision of the codicil as to be inseparable from it and thus override the purpose of the testator and make nugatory his whole clearly-defined scheme, We think the testator neither intended nor expected such a result to obtain by the making of the codicil. The persons who take and the share each takes were unalterably fixed by the testator. Whether the trusts are valid or void and whether the trusts terminated at the death of the widow or continued for the additional term, the same persons will take in the same proportions. Under such circumstances, the invalid parts of the instrument admitted to probate may be expunged without destroying the will as a whole, without interfering with the dominant purpose of the testator, and without creating intestacy, in whole or in part. ’ ’
The Eveland situation is almost exactly the situation in this case. Here, testator in his will set up a valid trust for his wife, for life, and until a named son, G-eorge B. Jr., reached 50 years of age. The codicil, by its express terms, did not affect the vesting of the remainder interests, but merely attempted to alter the time for distribution.
The trustees of the George B. Wilson estate, by assuming the validity of the will, proceeded to distribute the residuary trust upon the death of George B. Wilson, Jr. This would appear to be proper. Under the original will, the remainder *475 interests in Wilson’s four children were vested, subject to being divested only if a child predeceased the life beneficiary cmd left surviving descendants. (Cf. Matter of Krooss, 302 N. Y. 424 [1951].)
The codicil, it must be emphasized, did not attempt to change the nature of the remainder interests — it merely attempted to defer the “ time for distribution.” If the court were to excise the invalid provisions of the codicil, the testator’s testamentary scheme is left virtually intact. (Cf. Matter of Eveland, supra.)
Manifestly, the testator desired the residuary estate to be divided 7/20 to his widow, 1/20 to each of the four children if they survived him by five years, and 9/20 in trust for his widow with remainders divided equally among his four children. That precise distribution can be accomplished by excising the codicil and permitting the balance of the will to stand.
From the well-settled rules of law applicable to this case, it would appear that the foregoing construction of the Wilson will is necessary and proper. By following it, the interests which the undersigned was appointed to represent have received the share of the real estate to which they were entitled.
Parenthetically, it may be noted that the guardian ad litem has been served with a short memorandum of defendant Harry Baer, as trustee. The argument is there made that the will of George B. Wilson is invalid in the separate trusts for each of his four children of 1/20 of the residuary to last for a terra of five years from Wilson’s death, as well as an invalidity because the residuary trust of 9/20 of the estate was, by terms of the will, to continue until George B. Wilson, Jr., reached 50 years of age.
With those conclusions of Mr. Baer, the guardian ad litem must respectfully disagree. As the cases cited below establish, no invalidity results merely because the will specifies a period of years as the duration of the trusts. Where a trust is limited upon a certain person attaining a given age, the settled rule is that the trust is construed as if it was in terms provided that the trust was to continue until the person upon whose life it is limited attains the given age, or sooner dies. (Sawyer v. Cubby, 146 N. Y. 192 [1895]; Matter of Drury, 249 N. Y. 154 [1928]; Appell v. Appell, 177 App. Div. 570 [1st Dept., 1917], affd. 221 N. Y. 602.)
For these reasons, it would appear to be just and proper, and the guardian ad litem so recommends, to construe the will of George B. Wilson as validly disposing of his entire interest in the subject property as prayed for in the complaint.
*476 THE CONVEYANCES TO PLAINTIFF IN EXCHANGE FOE STOCK
The second basic question before this court for determination concerns three conveyances to plaintiff corporation by trustees in exchange for the proportionate share of stock in plaintiff. This objection was raised by the title company undoubtedly as a result of the decision by the Court of Appeals in Schoellkopf Holding Co. v. Kavinoky (216 N. Y. 507 [1916]).
The question raised is as to the power or propriety of trustees to exchange an undivided fractional interest in real property for the proportionate amount of stock in a real estate corporation formed to take title to the real estate.
The pertinent provisions of the wills in question follow:
Will of Emily Earle Wilson — Article Seventh (f):
“ (f) The Trustees of Fund A, and the Trustees of Fund B, during the continuance of the trusts and until actual distribution of the trust property, shall have full authority with respect to the Fund of which they are respectively Trustees, in their discretion:
“ 1. To retain property coming into their hands in the same form as received by them, and to hold, invest and reinvest the trust funds from time to time held hereunder in any common or preferred stocks, bonds, mortgages or other securities or, any other property, real or personal, wherever situated, which they may deem advisable, with full power of conversion and reconversion, all without the legal restrictions otherwise applicable to investments by trustees; to borrow money for the benefit of the trust; to sell, lease for any period of time not exceeding in any instance one hundred ninety-eight (198) years (and any such lease may commence in praesenti or in futuro), grant or release easements, subdivide, resubdivide and vacate subdivisions, mortgage, pledge, improve in any way, or exchange any property, real or personal, at any time held hereunder, all for such prices and upon such terms and conditions as may to them seem advisable, and for any of said purposes to make, execute and deliver any and all contracts, deeds, mortgages or other instruments necessary or desirable therefor;”
Will of Gertrude Rommel Wilson — Article Ninth:
“And I authorize my executors and trustees, the survivors and survivor, successors and successor of them, when acting either as executor or as trustee, to retain any investment I may leave at the time of my death so long as they may deem wise, without any liability on their part, or on the part of any of them, for any loss resulting from their so doing * * #.
*477 ‘ ‘ And I further direct that my executors and trustees, the survivors and survivor, successors and successor, in investing and keeping invested the property of my estate, shall not be limited to investments permissible to executors and trustees by law in the State of Pennsylvania, or elsewhere, but that, on the contrary, they may invest in anything whatsoever they may unanimously deem wise (excepting always mortgage participation certificates, it being my intention they shall not in any event whatsoever anywhere, at any time, invest in any mortgage participation certificates), without any liability on their part, or on the part of any of them, for any loss resulting from so doing. And I further authorize and empower them, when acting as executors of or trustees under this my will, to sell and dispose of all or any part of my real estate, or interest in real estate, at public or private sale, at such times, in such parcels, at such prices, for cash or upon security, and upon such terms as to them may seem fit, and to give good and sufficient deeds of conveyance in fee simple therefor to the purchaser or purchasers thereof, and their conveyance, duly executed, shall be good, valid and effectual to convey the title, without any liability on the part of the purchaser or purchasers to see to the application of the purchase money.”
Will of Florence Wilson Martens — Article Twenty-Second:
‘ ‘ I confer upon my Trustees, in addition to and not in limitation of any authority given it by law, power to exercise any of the following powers:
“1. To sell any real estate which may at any time form part of my estate, for such prices, upon such terms, in such way and manner, and for such interests and estates, as may be deemed wise, and to make good deeds therefor to the purchasers thereof, without any obligation on the latter to see to, or be responsible for, the application of the purchase money.
“2. To let on ground rent, release or extinguish the same, wholly or partially, whether by reduction of the amount of rent to be paid or otherwise; to mortgage, square, exchange, or join in the partition of, real estate, and to let or demise the same.
“ 3. To invest and reinvest, alter, vary and change investments and reinvestments from time to time at discretion, without confining my Trustee to what are known as 1 Legal Investments.’ I specifically authorize my Trustee to invest in preferred stocks. This power shall not be construed to include investments in common stock except to the extent of the Trustee exercising the power contained in Clause 6 of this Paragraph Twenty-second. I authorize my Trustees, in its discretion, to retain without liability, any of my investments in the form in *478 which they may he at the time of my decease. (From codicil dated August 27, 1937) * * *
“7. To join in any plan of lease, mortgage or consolidation, exchange, reorganization or foreclosure of any corporation in which my estate may hold stocks or bonds or other securities, and to deposit such stocks, bonds or other securities under such plan.”
It is to be noted that the interests represented by the guardian ad litem derive their claims solely through and under the will of Emily Earle Wilson. That will, as the clause above quoted provides, expressly empowers the executors and trustees to “ exchange any property, real or personal, at any time held hereunder ”. This provision would certainly seem to be broad enough to permit the trustees to convey their interest in the realty to plaintiff in consideration of the issuance of stock. For this reason, it would appear that the title company objection to this conveyance is not well founded.
As to the other two wills, the guardian ad litem expresses no opinion, but merely calls the language of the trustees ’ power clauses to the court’s attention with the statement that my wards do not claim any interests through these wills.
In any event, it is noted that all three of the questioned wills grant to the executors and trustees the power to sell real property comprising an asset of the estate. In such circumstances, the Legislature has provided in section 116 of the Real Property Law the means to permit the conveyance to a corporation in exchange for stock. That section permits the court to authorize the conveyance when 2/3 in number and amount of the adult beneficiaries agree to the conveyance.
Here, although apparently no such proceeding was instituted prior to the conveyances, all adult beneficiaries of the applicable estates have been made parties to this action, and, so far as the guardian ad litem has been informed, none of the adult parties has objected to the conveyances. For the court’s information, the adult parents of my wards have all been named parties defendant in the action, and all are represented by counsel. The guardian has been informed by such counsel that they not only do not object to the relief sought by the action, but in fact they favor it.
It does not take much discussion or research into the fractional interests in the subject realty to become convinced of the advisability and desirability of having title in a real estate corporation. As noted previously in this report, the estate of Emily Earle Wilson originally held an undivided 39/240ths interest in the property. This was then divided by her will *479 so that 1/5 of her interest went to trust fund A and 1/15 went to trust fund B. The balance of her interest was devised to nine other named beneficiaries. This alone shows how the fractional interests have been fragmentized so small as to make individual ownership not only unfeasible but also impractical.
With so many minute interests involved, some held by minors, it would be impossible to convey the property to any purchaser; it would be impossible to secure mortgage financing if the same were needed or desired. For these reasons alone, without even considering the needs of proper management of this valuable piece of property, the corporate holding of title seems to be dictated.
Accordingly, the guardian ad litem reports that the trustees under the will of Emily Earle Wilson apparently had power to convey their fractional interest in exchange for stock in plaintiff. In any event, I feel sure that had a proceeding been brought by the trustees under any or all the questioned wills pursuant to section 116 of the Beal Property Law this court would undoubtedly have granted the relief sought. Consequently, the most that is sought by this phase of the action is a validation nunc pro tunc of a conveyance which might have been authorized in the first place.
CONCLUSION AND RECOMMENDATION
The guardian ad litem has carefully examined the propositions of law raised by the instant motion for summary judgment. For the interest of all parties to the action, it is desirable to clear and quiet the title to the subject premises once and for all, if the same can be done within the law. The adult parties are in apparent agreement that the relief sought should be granted.
The guardian ad litem respectfully reports to this court that:
(1) So far as the interests represented by the guardian ad litem are concerned there are no issues of fact requiring a hearing or trial, and this case may properly be decided on this motion for summary judgment;
(2) To the extent indicated herein, the will of George B. Wilson validly disposed of his entire interest in the subject property;
(3) The conveyance to plaintiff by the trustees of the will of Emily Earle Wilson was both authorized by the will and, if necessary, may be validated by the court; and
(4) So far as the interests of my wards are concerned, a proper judgment may be entered herein as prayed for in the complaint.

*480

*481